USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/30/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- X

RAFAEL PEREZ,

        Plaintiff,

     - against -

NEW YORK STATE OFFICE OF
TEMPORARY AND DISABILITY
ASSISTANCE,

        Defendant.

----------------------------------------------------- X

**OPINION AND ORDER**

14-cv-1621 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

       Rafael Perez brings suit against the New York State Office of
Temporary and Disability Assistance ("OTDA"), alleging discrimination, hostile
work environment, and retaliation pursuant to Title VII of the Civil Rights Act of
1964 ("Title VII").[1]   OTDA now moves for summary judgment under Rule 56(c)
of the Federal Rules of Civil Procedure on the following grounds: (1) failure to
establish a prima facie case of discrimination; (2) failure to establish that the
OTDA's nondiscriminatory reason for termination was pretextual; (3) failure to

---

[1]     *See* Complaint ("Compl.") ¶ 1.

-1-

establish a hostile work environment claim; (4) failure to establish a prima facie case of retaliation; and (5) failure to establish that OTDA's legitimate non-retaliatory justification for termination was pretextual.  For the reasons set forth below, OTDA's motion is GRANTED.

## II.   BACKGROUND

For the purposes of this action, Perez identifies as a black and dark-skinned male from the Dominican Republic.[2]  Perez was employed by OTDA from May 29, 2012 to March 25, 2013 as a probationary Management Specialist Trainee, Level II in the Quality Control Unit ("QC Unit").[3]  OTDA's QC Unit is responsible for reviewing and auditing benefit determinations made by the New York City Human Resources Administration for the Supplemental Nutrition Assistance Program.[4]  Perez was supervised by Hassan Arshad from May 29, 2012 to early December 2012[5] and by Akoue Ajavon from December 7, 2012 until his termination on March 25, 2013.[6]  Mildred Bonilla was the manager to whom

---

[2]      *See* Defendant's Rule 56.1 Statement of Undisputed Facts ("Def. 56.1") ¶ 1.  However, Perez indicated that he was "light skinned" and "Hispanic" on a demographic form he filled out shortly after termination from OTDA.  *Id.* ¶ 2.

[3]      *See id.* ¶ 3.

[4]      *See id.* ¶ 13.

[5]      *See id.* ¶ 4.

[6]      *See id.* ¶¶ 5, 3.

Arshad and Ajavon reported during this period.[7]

## A.    Allegations of Discrimination and Hostile Work Environment

Perez contends that disparate treatment and discrimination by Arshad began during his training session.[8] Perez was hired in a group of five employees,[9] all of whom were subjected to the same probationary period.[10] Upon hire, the new employees were required to participate in a week-long training class led by Arshad,[11] followed by on-the-job training.[12] Perez contends that Arshad did not properly distribute training materials to him during the initial training.[13] Perez alleges that, unlike the other new hires, he was not given an organized binder, and that this contributed to his appearance of disorganization.[14] As a result, Arshad became frustrated with Perez during training.[15] Perez claims that Arshad's

---

[7]    *See id.* ¶ 6.

[8]    *See* Plaintiff's Response to Defendant's Rule 56.1 Statement ("Pl. 56.1") ¶ 50.

[9]    *See* Def. 56.1 ¶ 37.

[10]    *See id.* ¶ 42.

[11]    *See id.* ¶ 45.

[12]    *See id.* ¶ 47.

[13]    *See* Pl. 56.1 ¶ 50.

[14]    *See id.*

[15]    *See* Def. 56.1 ¶ 51.

frustration toward him contributed to his belief that he was being mistreated.[16]

Perez further alleges that both Arshad and Ajavon created new rules that only applied to him.[17]  Beginning with the second set of cases assigned to him, Perez fell behind in submitting his work.[18]  As completion of his cases became increasingly delayed, Perez was told by Arshad that he could not go into the field until he finished his current cases.[19]  Perez claims that this restriction prohibited him from finishing his work in a timely manner.[20]  When Ajavon was made Perez's supervisor in December of 2012, he scheduled weekly meetings to supervise Perez's work.[21]  Perez was forbidden from working late and required to report when he arrived, departed, and took breaks.[22]  Perez alleges, based on these facts, that he was treated differently than other OTDA employees.

In addition to his claims that Arshad and Ajavon singled him out,

---

[16]     See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opp. Mem.") at 5.

[17]     *See* Amended Complaint ("Am. Compl.") ¶ 20.

[18]     *See* Def. 56.1 ¶ 60.

[19]     *See* Pl. 56.1 ¶ 62.

[20]     *See id.*

[21]     *See* Def. 56.1 ¶¶ 77–78.

[22]     *See* Pl. 56.1 ¶ 112.

Perez also asserts that Bonilla was hostile to him based on a discriminatory comment she made in June 2012.[23]  When Perez asked her how she enjoyed her recent visit to the Dominican Republic, she replied, "too many Haitian waiters for my taste."[24]  Because Perez is from the Dominican Republic, he found this comment to be "distress[ing]."[25]  However, at no point during his employment did Bonilla, Arshad or Ajavon make any comments about Perez's race, color or national origin.[26]  Perez concedes that Bonilla, Arshad, and Ajavon did not know that Perez identified as black and that neither Arshad nor Ajavon knew of his Dominican ethnicity.[27]

## B. Plaintiff's Internal Complaints to the Office of Equal Opportunity and Diversity

On three separate occasions during his employment, Perez made complaints to Helen Torres, OTDA's Director of Equal Opportunity and Diversity ("EOD"), about alleged harassing behavior and discriminatory conduct on the part

---

[23]     *See* Opp. Mem. at 7.

[24]     *Id.*

[25]     *Id.*

[26]     *See* Def. 56.1 ¶ 12.

[27]     *See* Pl. 56.1 ¶¶ 10–11.

of his supervisors.[28]  These meetings took place in July 2012, December 2012, and late January 2013.[29]  During the first two meetings, Perez made no allegations of discrimination based on color, race, and national origin, but instead complained of conduct that he perceived to be discriminatory based on his age.[30]  During his last meeting with Torres, Perez told her that he was being discriminated against and subjected to a hostile work environment based on his national origin.[31]  Torres asked Perez to provide additional information to substantiate his claims and Perez failed to do so.[32]  Torres conducted an investigation and wrote a report concluding that Perez's allegations were unfounded.[33]  Torres only reported the first complaint to Bonilla.[34]  The two later complaints were not shared with Bonilla, Arshad or Ajavon.[35]

### C.    Plaintiff's Negative Performance Evaluations

---

[28]    *See id.* ¶ 93.

[29]    *See* Def. 56.1 ¶ 93.

[30]    *See* Pl. 56.1 ¶ 108.

[31]    *See id.* ¶ 116.

[32]    *See id.* ¶ 118.

[33]    *See id.* ¶ 122.

[34]    *See id.* ¶ 99.

[35]    *See id.* ¶¶ 100–101.

During this period, no other probationary employee or QC Unit reviewer made errors to the same extent or submitted cases as late as Perez did.[36] OTDA offers two examples.  On one occasion, six months after he began working, Perez created his own letterhead, and distributed a request, providing inaccurate contact information and mislabeling OTDA as "New York State Office of Disability and Temporary Assistance."[37]  Later, Perez conducted an interview during which he referred to the client by the incorrect surname.[38]

Perez received two negative performance evaluations.  The first reflected the period May 29, 2012 to October 30, 2012, in which Perez's performance was listed as "need[ing] improvement."[39]  Perez's second and final evaluation on March 8, 2013[40] was similarly negative and recommended his termination,[41] effective March 25, 2013.[42]  The evaluations outlined Perez's

---

[36]     See id. ¶ 70.

[37]     Def. 56.1 ¶ 56.

[38]     See id. ¶ 57.

[39]     Id. ¶ 75.

[40]     See Memorandum of Law in Support of Defendant's Motion for Summary Judgement ("Def. Mem.") at 11.

[41]     See Def. 56.1 ¶¶ 88–89.

[42]     See Def. Mem. at 12.

problems with "keeping organized, following directions . . ., and completing

assignments on time and without making frequent errors."[43]   OTDA proffered the

negative performance evaluations, in addition to the aforementioned work errors,

as justifications for Perez's termination.[44]

### D.    Procedural History

In December 2013, Perez received a Notice of Right to Sue letter from

the Equal Employment Opportunity Commission ("EEOC").[45]   This action was

brought within ninety days of receipt of the EEOC letter.[46]

## III.   LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate "only where, construing all the

evidence in the light most favorable to the non-movant and drawing all reasonable

inferences in that party's favor, there is 'no genuine issue as to any material fact

and . . . the movant is entitled to judgment as a matter of law.'"[47]   "A fact is

---

[43]     Def. 56.1 ¶ 89.

[44]`    *See id.* ¶ 90.

[45]     *See* Compl. ¶ 8

[46]     *See id.* ¶ 9

[47]     *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[48]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle [it] to judgment as a matter of law[.]"[49]  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts,"[50] and "may not rely on conclusory allegations or unsubstantiated speculation."[51]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[52]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those

---

[48]    *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[49]    *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

[50]    *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quotation marks and citations omitted).

[51]    *Id.* (quotation marks and citations omitted).

[52]    *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

of a judge.'"[53]

**B.     Title VII**

**1.     Discrimination**

Title VII proscribes discrimination against or termination of an individual on the basis of "race, color, religion, sex, or national origin."[54]  "To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting [analysis] laid out by *McDonnell Douglas Corp. v. Green*."[55]  "Under this framework a plaintiff must first establish a prima facie case of discrimination."[56]  To do so, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination" based on his membership in the protected class.[57]

An adverse employment action is an action by which a plaintiff "has

---

[53]     *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).

[54]     42 U.S.C. § 2000e-2.

[55]     *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[56]     *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

[57]     *Id.* at 492.

suffered 'a materially adverse change in his employment status' or in the terms and conditions of his employment."[58]  Examples of adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities."[59]

If the plaintiff succeeds in establishing a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[60]  Finally, if the employer articulates a nondiscriminatory reason for the challenged action, the burden shifts back to the plaintiff to demonstrate that the defendant's explanation was pretextual and/or that discrimination was a motivating factor.[61]

Under the *McDonnell Douglas* framework, an employee initially bears the burden of producing evidence sufficient to support a prima facie case of

---

[58]  *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 207 (quoting *Williams v. R.H. Donnelley*, *Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)).

[59]  *Id.* (quotation marks and citation omitted).

[60]  *See Ruiz*, 609 F.3d at 492.

[61]  *See id.* at 493 ("A plaintiff can rebut the employer's proffered legitimate, nondiscriminatory reason by proving that discrimination played a role in the employer's decision[.]").

discrimination.[62]  However, such evidence need be no more than "minimal" or "de

minimis."[63]  Once the plaintiff demonstrates a prima facie case, the burden shifts to

the defendant to articulate a legitimate, nondiscriminatory reason for the

differential treatment.[64]  "[T]he defendant must clearly set forth, through the

introduction of admissible evidence, the reasons for" its actions.[65]  If the

explanation is legitimate and nondiscriminatory, the burden shifts back to the

plaintiff to demonstrate that the defendant's proffered explanation is merely a

pretext for discrimination.[66]  "[P]laintiff bears the burden of proving not just

pretext, but racial discrimination . . . and thus the burden of pointing the court to

the existence of evidence that would raise a disputed issue of material fact on this

score."[67]

       Notably, in order to raise an issue of fact that is sufficiently material

---

[62]    *See McDonnell Douglas*, 411 U.S. at 802.

[63]    *See, e.g.*, *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

[64]    *See Ruiz*, 609 F.3d at 492.

[65]    *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

[66]    *See Patterson v. County of Oneida, New York*, 375 F.3d 206, 221 (2d Cir. 2004).  *See also Beachum v. AWISCO New York*, 785 F. Supp. 2d 84, 93–94 (S.D.N.Y. 2011).

[67]    *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 561 (S.D.N.Y. 2005).

to defeat a motion for summary judgment, the plaintiff must produce more than simply some evidence; it must be enough evidence to support a rational finding that the defendant's explanation for the adverse action is actually a pretext to disguise discrimination.[68]  A plaintiff is required to do "more than cite to [his] mistreatment and ask the court to conclude that it must have been related to [his] race."[69]

"The factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the prima facie case, suffice to show intentional discrimination."[70]  The factfinder may disbelieve the defendant's explanation either because the facts underlying the explanation are false or because the explanation is weakened by inconsistencies or logical flaws.[71]  Therefore, the plaintiff can survive summary judgment if he produces facts sufficient to permit a

---

[68]     *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  *See also Mavrommatis v. Carey Limousine Westchester, Inc.*, No. 10 Civ. 3404, 2011 WL 3903429, at *2 (2d Cir. Sept. 7, 2011); *Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 283 (S.D.N.Y. 2006).

[69]     *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001).

[70]     *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  *Accord Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 134 (2000).

[71]     *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 110 (2d Cir. 2001) (stating that summary judgment for defendant was improper where the defendant's stated reasons for its actions lacked credibility due to inconsistencies).

reasonable factfinder to disbelieve the defendant's explanation in favor of the plaintiff's explanation that discrimination occurred.  The plaintiff can sustain this burden by proving that "the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that [the adverse employment decision] was motivated at least in part by . . . discrimination."[72]

### 2.    Hostile Work Environment

To establish a prima facie hostile work environment claim under Title VII, a plaintiff must demonstrate that (1) a defendant's conduct was so objectively severe or pervasive as to create an environment that a reasonable person would find hostile and abusive, (2) he subjectively perceived the environment to be hostile or abusive, and (3) defendant created said environment because of a plaintiff's protected status.[73]

In order to make out a successful hostile work environment claim, "the plaintiff must show that the workplace is permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

---

[72]    *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 114 (2d Cir. 2007).

[73]    *See Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (citing *Gregory v. Daly,* 243 F.3d 687, 691–92 (2d Cir. 2001)).

environment.'"[74]  Thus, when workplace conditions are "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated."[75]  "Usually, a single isolated instance of harassment will not suffice to establish a hostile work environment unless it was 'extraordinarily severe.'"[76]

### 3.    Retaliation

"Title VII also makes it unlawful for an employer to discriminate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . in an investigation, proceeding, or hearing under this subchapter.'"[77]  To establish a prima facie case of retaliation, a plaintiff must show: "(1) that [he] participated in an activity protected by Title VII, (2) that [his] participation was known to [his] employer, (3) that [his] employer thereafter subjected [him] to a materially adverse

---

[74]    *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

[75]    *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris*, 510 U.S. at 21).

[76]    *Howley*, 217 F.3d at 153 (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)).

[77]    *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010) (quoting 42 U.S.C. § 2000e-3(a)).

-15-

employment action, and (4) that there was a causal connection between the

protected activity and the adverse employment action."[78]  An adverse employment

action in the context of a Title VII retaliation claim is an action sufficiently severe

to dissuade a reasonable worker from making or supporting a discrimination

charge.[79]  "Title VII's anti-discrimination and anti-retaliation provisions 'are not

coterminous;' anti-retaliation protection is broader and 'extends beyond

workplace-related or employment-related retaliatory acts and harm.'"[80]

> "Proof of causation can be shown either: (1) indirectly, by
> showing that the protected activity was followed closely by
> discriminatory treatment, or through other circumstantial
> evidence such as disparate treatment of fellow employees
> who engaged in similar conduct; or (2) directly, through
> evidence of retaliatory animus directed against the plaintiff
> by the defendant."[81]

The three-step *McDonnell Douglas* burden-shifting analysis also

applies to retaliation claims.[82]  "At the summary judgment stage, if the plaintiff

---

[78]     *Id.*

[79]     *See Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68
(2006).

[80]     *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington
N.*, 548 U.S. at 67).

[81]     *Id.* at 170 (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d
111, 117 (2d Cir. 2000)).

[82]     *See Kaytor*, 609 F.3d at 552.

-16-

presents at least a minimal amount of evidence to support the elements of the claim, the burden of production shifts to the defendant to proffer a legitimate non-retaliatory reason for the adverse employment action."[83]  "If the employer produces such evidence, the employee must, in order to avoid summary judgment, point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was a 'substantial reason for the adverse employment action.'"[84]

## IV.   DISCUSSION

### A.   Discrimination

#### 1.   Plaintiff Cannot Establish a Prima Facie Case of Discrimination

Perez's speculative and conclusory allegations fail to raise an inference of discrimination sufficient to satisfy the fourth element of the *McDonnell Douglas* framework under Title VII.  Accordingly, Perez's discrimination claim must be dismissed.  Perez has satisfied the first three elements of a prima facie case for discrimination because he is a member of a protected class, was qualified for the position he held, and termination constitutes an adverse

---

[83]     *Id.* at 552-53.

[84]     *Id.* at 553 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

employment action.[85]  However, Perez has failed to present evidence that adverse

actions were taken against him because of a protected characteristic, as opposed to

his deficient work performance.  Although "employers are unlikely to leave a

'smoking gun' admitting discriminatory motive,"[86] Perez does not meet his

evidentiary burden under the *McDonnell Douglas* framework.

Perez attempts to raise an inference of discrimination by showing

disparate treatment, but is unsuccessful.  To show disparate treatment, a plaintiff

must show that the employer treated plaintiff "less favorably than a similarly

situated employee" who is outside of his protected class[87] and that such treatment

was based on plaintiff's race, color, or other protected characteristic.[88]  A plaintiff

must be similarly situated "in all material respects to the individuals with whom

[he] seeks to compare [him]self."[89]  "Ordinarily, the question [of] whether two

---

[85]     *See Kessler*, 461 F.3d at 207.

[86]     *Tolbert v. Smith*, No.14-1012, slip. op. at 21 (2d Cir. June 24, 2015).

[87]     *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)
(quoting *Graham v. LIRR*, 230 F.3d 34, 39 (2d Cir. 2000)).

[88]     *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993)
(distinguishing "between disparate treatment and disparate impact theories of
employment discrimination") (internal quotation marks omitted).

[89]     *Graham*, 230 F.3d at 39.

employees are similarly situated is a question of fact for the jury."[90]  However, "[a] court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met."[91]

In this case, Perez alleges that disparate treatment began during training[92] and continued throughout his employment, culminating with his termination.  Perez has testified that he was subjected to special treatment, given that he was forbidden from making field visits,[93] was required to attend weekly meetings, and ordered to report when he arrived to, departed from, and took breaks at work.[94]  Perez argues that these "obstacles" were directly placed in his path to hinder his job performance,[95] but does not provide any evidence to support this argument.  Furthermore, despite showing that he was treated differently from the other new hires, Perez fails to provide evidence that the alleged disparate treatment was related to a protected characteristic under Title VII as opposed to his deficient

---

[90]     *Mandell*, 316 F.3d at 379.

[91]     *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

[92]     *See* Pl. 56.1 ¶ 50.

[93]     *See id.* ¶ 62.

[94]     *See id.* ¶ 112.

[95]     *Id.* ¶ 60.

work performance.  In fact, such treatment is not surprising when supervising the work of a failing employee.

OTDA argues that Perez was not similarly situated in all material respects to the other employees at OTDA due to Perez's poor work performance.[96] Perez concedes that no other employee had the same negative performance record.[97]  Although the question of whether two employees are similarly situated in all material aspects is generally a question for a jury, summary judgment is appropriate in this instance.  No reasonable jury could find the other OTDA employees to be similarly situated in all material aspects, given that no one else "made errors as . . . frequently as [Perez] did, [or] . . . submit[ted] [ ] cases as substantially late as Perez . . . consistently did."[98]  Accordingly, the evidence provided by Perez fails to raise an inference of discrimination through disparate treatment.

Perez also cites to Bonilla's comment that there were "too many Haitian waiters" during her trip to the Dominican Republic.[99]  Similarly, Perez

---

[96]     *See* Def. Mem. at 19.

[97]     *See* Def. 56.1 ¶ 70.  *See also* Pl. 56.1 ¶ 70.

[98]     Def. 56.1 ¶ 70.

[99]     Opp. Mem. at 7.

claims he experienced general hostility from Arshad, Ajavon, and Bonilla and attributes such mistreatment to his race, color or national origin.[100]  With regard to both claims, Perez's allegations are based on nothing more than speculation. Bonilla's comment was not directed towards Perez, but he speculates that it signifies a deep-rooted discrimination against people of color.[101]  Perez also fails to offer any evidence that any alleged hostility from Arshad and Ajavon was linked to his membership in a protected class.  Given a lack of even de minimis evidentiary support, Perez fails to satisfy his burden under the *McDonnell Douglas* framework.

Although the Second Circuit has "expressed the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent,"[102] it is also clear that the "salutary purposes of summary judgment – avoiding protracted and harassing trials – apply no less to discriminatory cases than to . . . other areas of litigation."[103] Because Perez provides no evidence that OTDA's actions were motivated by discriminatory animus and does not raise an inference of discrimination through

---

[100]     *Id.* at 15.

[101]     *See* Pl. 56.1 ¶ 12.

[102]     *Tolbert*, No 14-1012, slip. op. at 12 (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).

[103]     *Id.* (citing *Weinstock*, 224 F.3d at 41).

disparate treatment, he has failed to provide proof from which a reasonable juror could find a prima facie case of discrimination.

### 2.    OTDA's Legitimate, Nondiscriminatory Reason

Assuming, *arguendo*, that Perez did establish a prima facie case of discrimination, OTDA has offered a specific, legitimate, and nondiscriminatory reason for its decision.  OTDA documented Perez's work errors throughout his employment.  Perez does not deny that he made errors, but argues that he had "uncooperative clients and third parties, inaccurate addresses, was under a lot of pressure, or that he was prevented from completing his cases by his supervisors."[104] Despite offering these excuses, Perez fails to meet his burden under the *McDonnell Douglas* framework because he offers only conclusory statements to demonstrate that OTDA's reason was offered as pretext or that discrimination was a motivating factor.  Accordingly, Perez's discrimination claim is dismissed with prejudice.

### B.    Hostile Work Environment

Perez also claims that he was subjected to a hostile work environment because of his race, color or national origin.[105]  As the basis of his hostile work environment claim, Perez argues that his supervisors placed obstacles in his path

---

[104]    Def. Mem. at 20.

[105]    *See* Am. Compl. ¶ 51.

that made it difficult, if not impossible, to complete his work.[106]  These obstacles

included prohibiting Perez from making field visits,[107] as well as requiring him to

attend weekly meetings and to report his schedule.[108]  Perez further alleges that

other employees were not allowed to speak with him.[109]  Perez claims that these

restrictions had the combined effect of holding him to a higher level of scrutiny.[110]

In furtherance of his argument, Perez also cites to the training session where

Arshad displayed frustration towards him[111] and to meetings with Ajavon where

Perez was allegedly berated and belittled.[112]  Perez asserts that these events

occurred regularly and that they were pervasive enough to create an environment

that a reasonable person would find hostile and abusive.  Perez's complaint also

cites to Bonilla's remark as to there being "too many Haitian waiters" in the

Dominican Republic as evidence of discriminatory hostility.[113]

---

[106]    *See id.* ¶ 60.

[107]    *See* Pl. 56.1 ¶ 62.

[108]    *See id.* ¶ 112.

[109]    *See* Opp. Mem. at 14.

[110]    *See id.*

[111]    *See* Def. 56.1 ¶ 51.

[112]    *See* Opp. Mem. at 15.

[113]    *Id.* at 7.

Bonilla's comment related to Haitian waiters was an isolated instance, not directed at Perez, and thus cannot be considered "sufficiently severe."[114]  The other alleged incidents of harassment were related to Perez's work performance.  "Allegations of negative job evaluations or excessive reprimands are insufficient to establish a hostile environment claim."[115]  Perez fails to provide any evidence that conditions were created because of Perez's protected status.  Instead, Perez asserts that because he was the only male from the Dominican Republic at OTDA and spoke with an accent, the alleged harassment was "undoubtedly linked to his [protected] status."[116]  Without offering any further support, Perez fails to establish a prima facie case that any alleged harassing behavior was linked to a discriminatory animus as opposed to his work performance.  Thus, when viewed collectively, the evidence does not support a finding that OTDA's conduct was sufficiently severe or pervasive to alter the conditions of Perez's employment.

For these reasons, Perez fails to establish a prima facie hostile work environment claim sufficient to withstand summary judgment.  As with his

---

[114]    *Tolbert*, No.14-1012, slip. op. at 23.  *Accord Howley*, 217 F.3d at 153.

[115]    *Salerno v. Town of Bedford, NY*, No. 05 Civ. 7293, 2008 WL 5101185, at *8 (S.D.N.Y. Dec. 3, 2008) (citing *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001)).

[116]    Opp. Mem. at 15.

discrimination claim, plaintiff provides no evidence of discriminatory animus

sufficient to raise a material issue of fact.  Because a hostile work environment

claim requires that the actions occurred as a result of Perez's race, color or national

origin, Perez's claim is dismissed with prejudice.

### C.    Retaliation

#### 1.    Plaintiff Cannot Establish a Prima Facie Case of Retaliation

OTDA argues that Perez fails to present evidence that there was a

causal connection between the protected activity he engaged in and the adverse

action taken against him.[117]  The proof required to establish a causal connection

between protected activity and the adverse employment action can be shown

either:

> (1) indirectly, by showing that the protected activity was followed
> closely by discriminatory treatment, or through other
> circumstantial evidence such as disparate treatment of fellow
> employees who engaged in similar conduct; or (2) directly,
> through evidence of retaliatory animus directed against the
> plaintiff by the defendant.[118]

It is undisputed that Perez engaged in a protected activity when he

complained to Torres about perceived discrimination based on race and national

origin.  Perez offers no direct evidence, however, that OTDA retaliated against him

---

[117]    *See* Def. Mem. at 22.

[118]    *Gordon*, 232 F.3d at 117.

on the basis of his complaints to EOD.  The parties disagree about whether those responsible for Perez's negative performance evaluations and subsequent termination were even aware of his participation in protected activity.  Perez concedes that Torres reported only the first complaint to Bonilla, and that she did not report the last two complaints to Bonilla, Arshad or Ajavon.[119]  OTDA argues that there is no evidence that Bonilla, Arshad, and Ajavon were otherwise made aware of the protected activity.[120]  Even if Bonilla, Arshad, and Ajavon did have knowledge of the complaints, Perez offers no direct evidence that the termination decision was related to a discriminatory animus, based on such knowledge.

Without evidence that Bonilla, Arshad or Ajavon knew of Perez's last complaint, Perez is unable to provide indirect evidence of a causal connection through temporal proximity.  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close."[121]  The Second Circuit has not "drawn a bright line rule to define the outer limits beyond

---

[119]    *See id.* ¶¶ 100–101.

[120]    *See* Pl. 56.1 ¶¶ 99–101.

[121]    *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks omitted).

which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."[122]   However, courts in this Circuit have held that periods "of two months or more defeat an inference of causation."[123]   Perez's complaints to EOD were made in July 2012, December 2012, and late January 2013.[124]   Perez's termination was recommended on March 8, 2013 and became effective on March 25, 2013.[125]   The only complaint that Bonilla knew of was made by Perez in July 2012, approximately eight months prior to his termination.   Thus, Perez is unable to establish through temporal proximity a connection between the complaints he made to EOD and his termination.

For these reasons, Perez fails to present either direct or indirect evidence that there was a causal connection between the protected activity he

---

[122]     *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001).   *Accord Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

[123]     *Ragin v. East Ramapo Cent. Sch. Dist.*, No. 05 Civ. 6496, 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010).   *Accord Yarde*, 360 F. Supp. 2d at 562 ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); *Hussein v. Hotel Employees & Rest. Union*, *Local 6*, No. 98 Civ. 9017(SAS), 2002 WL 10441 (S.D.N.Y. Jan. 3, 2002) (two month gap defeats retaliatory nexus).

[124]     *See* Def. 56.1 ¶ 93.

[125]     *See id.* ¶ 3.

engaged in and the adverse action taken against him.  Accordingly, Perez has not established a prima facie case of retaliation and his claim must be dismissed.

### 2.    OTDA's Non-Retaliatory Reason for Termination

Even if Perez had established a prima facie case, OTDA has proffered a legitimate, non-retaliatory reason for Perez's termination.  OTDA asserts that the termination was based on Perez's problems with "keeping organized, following directions . . . and completing assignments on time and without making frequent errors."[126]  Perez has merely provided excuses for his work errors and problems, but has offered no further evidence that OTDA's non-retaliatory reason is pretextual and that retaliation was a substantial reason for his termination.  Accordingly, Perez has not made a sufficient evidentiary showing to survive summary judgment and his retaliation claim is dismissed with prejudice.

## V.    CONCLUSION

For the foregoing reasons, OTDA's motion for summary judgment is GRANTED.  The Clerk of the Court is directed to close this motion (Docket No. 40) and this case.

---

[126]    *Id.* ¶ 89.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:          New York, New York
                June 30, 2015

**- Appearances -**

**For Plaintiff:**

Fausto E. Zapata, Jr., Esq.
Kelly Ann Taddonio, Esq.
The Law Offices of Fausto E. Zapata, Jr., P.C.
277 Broadway, Suite 206
New York, New York 10007
(212) 766-9870

**For Defendant:**

Linda Fang
Assistant Attorney General
Office of the Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8656